IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 19-14279

———————————————

UNITED STATES OF AMERICA,

Appellee,

v.

JAMAAL HAMEEN,

Appellant.

———————————————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

———————————————————————————

INITIAL BRIEF OF APPELLANT HAMEEN

———————————————————————————

James T. Skuthan
Acting Federal Defender

Rosemary Cakmis
Senior Litigator
Florida Bar No. 343498
201 South Orange Ave., Suite 300
Orlando, Florida 32801
Telephone: (407) 648-6338
Email: rosemary_cakmis@fd.org
Counsel for Appellant

# Appeal No. 19-14279

## *United States of America v. Jamaal Hameen*

### CERTIFICATE OF INTERESTED PERSONS

The persons listed below may be interested in the outcome of this case:

Bentley, III, A. Lee

Bodnar, Roberta Josephina

Cakmis, Rosemary

Clifton, Douglas Hill

Elm, Donna

Hameen, Jamaal Abu Talib

Howard, Katherine

Howard, The Honorable Marcia Morales

Klindt, The Honorable James R.

Korody, Patrick Kane

Lopez, Maria Chappa

**No. 19-14279**

*United States of America v. Jamaal Hameen*

CERTIFICATE OF INTERESTED PERSONS – *CONTINUED*

Mesrobian, David B.

Muldrow, Stephen

O'Neill, Robert

Rhodes, David

Roper, Christopher Eric

Shorstein, Paul A.

Skuthan, James T.

Talbot, II, Frank Merrill

Toomey, The Honorable Joel B.

Yazgi, Susan Good

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Jamaal Hameen requests oral argument. This appeal involves several issues, including the important and fact-dependent question of whether Mr. Hameen knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel. Mr. Hameen respectfully submits that argument by counsel familiar with the issues, facts, and record on appeal will help this Honorable Court resolve this action.

# TABLE OF CONTENTS

Certificate of Interested Persons ..................................................... C1 of 2

Statement Regarding Oral Argument ........................................................i

Table of Contents......................................................................................ii

Table of Citations ................................................................................... v

Statement of Subject Matter and Appellate Jurisdiction.......................ix

Statement of the Issues.............................................................................1

Statement of the Case ..............................................................................2

Course of Proceedings and Disposition in the Court Below .....................2

Statement of the Facts ..............................................................................3

      A. Indictment...................................................................................3

      B. *Faretta* Hearing and Arraignment..............................................3

      C. Competency...................................................................................5

      D. Mr. Hameen's Request for Representation .................................7

      E. Change of Counsel Shortly Before Trial and Partial Denial of

         Defense Counsel's Continuance Motion ....................................8

      F. February 2019 Trial ....................................................................9

         1. Government's case-in-chief.....................................................9

         2. Mr. Hameen's defense..........................................................11

3. Motion for judgment of acquittal...........................................12

4. Jury instructions and verdict .................................................12

G. Post-Trial Competency Concerns and Mr. Hameen's Reiteration
that He Required Counsel ...........................................................13

H. Mr. Hameen Proceeds *Pro Se* Despite Mental Health Concerns
and Without a Second *Faretta* Hearing.....................................15

I. Post-Trial *Rehaif* Arguments and Decision...............................17

J. Sentencing Issues ......................................................................23

Standards of Review.......................................................................25

Summary of the Arguments.............................................................27

Arguments and Citations of Authority.............................................33

I. Mr. Hameen Did Not Knowingly, Intelligently, and Voluntarily
Waive His Right to Counsel After Trial.............................................33

II. *Rehaif* Requires Vacatur of Mr. Hameen's Conviction. .....................39

A. The District Court Erred in Declining to Dismiss Mr. Hameen's
Indictment....................................................................................40

1. De novo review applies ........................................................40

2. The indictment is facially deficient .......................................41

3. The indictment is jurisdictionally defective...........................41

B. The District Court Erred in Denying Mr. Hameen's Motion for Judgment of Acquittal or New Trial. ........................................ 43

   1. The district court abused its discretion in determining that Mr. Hameen had not shown excusable neglect. .................. 43

   2. Mr. Hameen's  motion for judgment of acquittal or new trial should have been granted. ...................................................... 49

C. Under Plain Error Review, Mr. Hameen's Conviction Must Be Vacated. ....................................................................................... 52

III. Mr. Hameen's Conviction Should Be Vacated Because 18 U.S.C. § 922(g) Is Unconstitutional, Facially and as Applied. ...................... 56

IV. Aggravated Assault under Fla. Stat. § 784.021 Is Not A "Violent Felony" or "Crime of Violence." .......................................... 58

V. Mr. Hameen's Fla. Stat. § 893.13 Convictions Are Not "Serious Drug Offenses" or "Controlled Substance Offenses." ................................... 61

VI. Mr. Hameen's ACCA Sentence Violates the Fifth and Sixth Amendment. ........................................................ 63

Conclusion ................................................................................................ 65

Certificate of Compliance ........................................................................ 66

Certificate of Service ................................................................................ 66

## TABLE OF CITATIONS

## Cases

*Advanced Estimating System, Inc. v. Riney*, 77 F.3d 1322
(11th Cir. 1996) ....................................................................... 25, 29, 43

*Alleyne v. United States*, 570 U.S. 99 (2013) ..................................... 63, 64

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) ...................... 64

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) .................................... 63, 64

*Begay v. United States*, 553 U.S. 137 (2008) ........................................... 62

*Borden v. United States*, 140 S.Ct. 1262 (2020) ................................. 31, 60

*Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848 (1996) .... 44, 45, 47

*Descamps v. United States*, 133 S.Ct. 2276 (2013) .................................. 60

\* *Faretta v. California*, 422 U.S. 806 (1975) ..................................... *passim*

*Mathis v. United States*, 136 S.Ct. 2243 (2016) ...................................... 60

*Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016) ............... 54, 55

*Moncrief v. Holder*, 133 S.Ct. 1678 (2013) ............................................. 60

*Neder v. United States*, 527 U.S. 1 (1999) ............................................... 56

*Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) ........................................................... 21, 29, 42, 48

*Reed v. Ross*, 468 U.S. 1 (1984) .............................................................. 40

*Rehaif v. United States*, 139 S.Ct. 914 (2019) ......................................... 8

TABLE OF CITATIONS—*CONTINUED*

## Cases

\* *Rehaif v. United States*, 139 S.Ct. 2191 (2019) .............................. *passim*

*Scarborough v. United States*, 431 U.S. 563 (1977) ................................ 58

*Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) .............................................. 64

*Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012) ............. 61

*Shepard v. United States*, 544 U.S. 13 (2005) ........................................ 64

*Staples v. United States*, 511 U.S. 600 (1994) ........................................ 62

*State v. Adkins*, 96 So.3d 412 (Fla. 2012) ................................................ 61

*Strozier v. Newsome*, 926 F.2d 1100 (11th Cir. 1991) ............................. 35

*Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328
(11th Cir. 2013) ...................................................................... 31, 59, 60

*United States v. Brown*, 752 F.3d 1344 (11th Cir. 2014) ........................ 42

*United States v. Cartman*, 607 F. App'x 888 (11th Cir. 2015) .......... 36, 39

\* *United State v. Cash*, 47 F.3d 1083 (11th Cir. 1995) ........................ 25, 33

*United States v. Cespedes*, 151 F.3d 1329 (11th Cir. 1998) ................... 26

*United States v. Edmond*, 780 F.3d 1126 (11th Cir. 2015) .............. 53, 56

*United States v. Fant*, 890 F.2d 408 (11th Cir. 1989) ............................. 33

*United States v. Gallegos*, 784 F.3d 1356 (10th Cir. 2015) .................... 56

TABLE OF CITATIONS—*CONTINUED*

## Cases

*United Sates v. Garey*, 540 F.3d 1253
  (11th Cir. 2008) (en banc) ...................................................... 36, 37, 39

\* *United States v. Golden*, 854 F.3d 1256 (11th Cir. 2017) .......... 31, 59, 60

*United States v. Hantzis*, 625 F.3d 575 (9th Cir. 2010) ................... 27, 34

*United States v. Hernandez*, 433 F.3d 1328 (11th Cir. 2005) 26, 49, 51-52

*United States v. Izurieta*, 710 F.3d 1176 (11th Cir. 2013) ..................... 43

*United States v. Jones*, 21 F.3d 165 (7th Cir. 1994) ............................... 55

*United States v. Kramer*, 73 F.3d 1067 (11th Cir. 1996) ........................ 26

*United States v. Lopez*, 514 U.S. 549 (1995) ..................................... 57, 58

*United States v. Lumley*, 135 F.3d 758 (11th Cir. 1998) ........................ 26

*United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015) ................... 41

*United States v. McBride*, 362 F.3d 360 (6th Cir. 2004) .................. 27, 34

*United States v. McIntosh*, 704 F.3d 894 (11th Cir. 2013) ..................... 25

*United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980) ...................... 43

\* *United States v. Medley*, 972 F.3d 399 (4th Cir. 2020) .................... 53–56

*United States v. Miller*, 954 F.3d 551 (2d Cir. 2020) ............................. 56

*United States v. Montgomery*, 442 F.Supp.3d 875
  (W.D. Pa. 2020) ...................................................................... 45, 47, 52

## TABLE OF CITATIONS—*CONTINUED*

## Cases

*United States v. Moore*, 954 F.3d 1322 (11th Cir. 2020) ............. 40, 43, 55

*United States v. Nix*, 250 F.3d 738 (5th Cir. 2001) .................................. 48

*United States v. Owen*, 963 F.3d 1040 (11th Cir. 2020) .............. 34, 35, 38

*United States v. Palomino Garcia*, 606 F.3d 1317
    (11th Cir. 2010) ...................................................................... 59

*United States v. Peter*, 310 F.3d 709 (11th Cir. 2002) ............................ 43

*United States v. Reed*, 941 F.3d 1018 (11th Cir. 2019) .................... 53, 55

*United States v. Rogers*, 94 F.3d 1519 (11th Cir. 1996) ......................... 55

*United States v. Rosales-Bruno*, 676 F.3d 1017 (11th Cir. 2012) ..... 59, 60

*United States v. Smith*, 775 F.3d 1262 (11th Cir. 2014) ............. 27, 32, 61

*United States v. Sperrazza*, 804 F.3d 1113 (11th Cir. 2015) ........... 25, 40

*United States v. Stanley*, 739 F.3d 633 (11th Cir. 2014) ........................ 35

*United States v. Wilson*, 2020 WL 6277720 (11th Cir. Oct. 27, 2020) ... 33

*United States v. Wright*, 607 F.3d 708 (11th Cir. 2010) ......................... 58

*Yang v. Bullock Financial Group, Inc.*, 435 F. App'x 842
    (11th Cir. 2011) ...................................................................... 44

*Yates v. United States*, 135 S.Ct. 1074 (2015) ........................................ 63

TABLE OF CITATIONS—*CONTINUED*

## Cases

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ...........................26

*United States v. Zitron*, 810 F.3d 1253 (11th Cir. 2016)........................26

## Statutes

18 U.S.C. § 922................................................................*passim*

18 U.S.C. § 924................................................................*passim*

18 U.S.C. § 3231...............................................................ix, 43

18 U.S.C. § 3742...................................................................ix

28 U.S.C. § 1291...................................................................ix

28 U.S.C. § 1294...................................................................ix

Florida Statutes § 784.021 .......................... 1, 31, 32, 58, 60, 61

Florida Statutes § 893.13 ........................................ 2, 32, 61–63

## Rules

Fed. R. App. P. 27 ..................................................................66

Fed. R. App. P. 32 ..................................................................66

Fed. R. Crim. P. 12(b)(3)........................................................25

TABLE OF CITATIONS—*CONTINUED*

## U.S. Sentencing Guidelines

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is a direct appeal from a final judgment in a criminal case, entered by the United States District Court, Middle District of Florida, Jacksonville Division, on October 24, 2019. Doc. 457. The district court had original jurisdiction under 18 U.S.C. § 3231. Appellant/Defendant Jamaal Hameen filed a timely notice of appeal on October 28, 2019. Doc. 458. This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. §§ 1291, 1294.

## STATEMENT OF THE ISSUES

I.      Whether Mr. Hameen knowingly, intelligently, and voluntarily waived his right to counsel.

II.     Whether, in light of *Rehaif v. United States*, 139 S.Ct. 2191 (2019), the facially deficient indictment requires reversal and/or failed to confer subject-matter jurisdiction.

III.    Whether the district court abused its discretion in finding that Mr. Hameen had not shown excusable neglect for his untimely *Rehaif* motion for a judgment of acquittal or, in the alternative, for a new trial; and whether the court abused its discretion in finding his motion failed on the merits.

IV.     Whether the cumulative effect of the plain *Rehaif* errors prejudiced Mr. Hameen's substantial rights and infected the fairness, integrity, or public reputation of the proceedings.

V.      Whether 18 U.S.C. § 922(g) exceeds Congress' power under the Commerce Clause, both facially and as applied.

VI.     Whether prior convictions under Florida Statutes § 784.021 qualify as violent felony offenses under the Armed Career Criminal Act (ACCA) or crimes of violence under the Sentencing Guidelines.

VII.  Whether prior convictions under Florida Statutes § 893.13 qualify as serious drug offenses under the ACCA or controlled substance offenses under the Sentencing Guidelines.

VIII. Whether Mr. Hameen's ACCA sentence is unconstitutional because he was sentenced above § 922(g)'s ten-year statutory maximum, and the ACCA's requirements were not alleged in an indictment and proven to a jury beyond a reasonable doubt.

## STATEMENT OF THE CASE

## Course of Proceedings and Disposition in the Court Below

A single-count indictment charged Mr. Hameen with possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Doc. 1. After a *Faretta*[1] and competency hearing and several counsel substitutions, he proceeded to trial, and the jury found him guilty. Docs. 309, 312, 317. The district court sentenced Mr. Hameen to 180 months' imprisonment, the mandatory minimum under the ACCA, § 924(e), followed by 60 months supervised release. Doc. 451. Mr. Hameen is incarcerated.

---

[1]  *Faretta v. California*, 422 U.S. 806 (1975).

## Statement of the Facts

### A.    Indictment

The indictment charged Mr. Hameen violated §§ 922(g)(1) and 924(e) by having been convicted of certain felony offenses and thereafter "knowingly possess[ing], in and affecting interstate and foreign commerce, a firearm." Doc. 1. The indictment, returned in 2018, did not charge Mr. Hameen with knowing he was a convicted felon at the time of the alleged possession. *Id.* Nor did it charge that any of the previous felony offenses qualified as "violent felony" or "serious drug" offenses or were "committed on occasions different from one another." *Id.*

### B.    *Faretta* Hearing and Arraignment

At his July 2018 initial appearance, Mr. Hameen informed the court he wished to represent himself. Doc. 51 at 6–7, 9. More specifically, Mr. Hameen wanted to appear on behalf of "the JAMAL ABU TALIB HAMEEN TRUST." *Id.* at 9. When asked if he understood the charge contained in the indictment, Mr. Hameen responded, "I accept the charges for value and consideration in return for a full settlement and closure with Account No. 76701080053, as well as Case No. 3:18-cr-115-J." *Id.* at 6.

3

The court commented that Mr. Hameen either understood the charge but was unwilling to verbalize it or "truly d[id]n't understand what [was] going on." *Id.* at 13. The court scheduled a *Faretta* hearing to determine if Mr. Hameen's waiver of counsel was knowing and voluntary and appointed the Federal Defender's Office as standby counsel. *Id.* at 11–12.

Three days later, at the *Faretta* hearing, the court again asked Mr. Hameen if he understood the charge. Doc. 52 at 13. Although Mr. Hameen claimed he understood and previously had represented himself, *id.* at 23, he then explained:

> And I know that I would be able to go to the heart of those matters with God to investigate me and bring forth information that could rectify the entire process. Right now the—the indictment is really based on an issue of commerce. And commerce involves contracts. And I never—no one has shown me the contract. That's what I'm interested in.

*Id.* at 26. Mr. Hameen stated that his constitutional rights, including those under the Ninth and Eleventh Amendments, had been violated and asked the court if he was going to be tried in "common law, equity, admiralty or maritime jurisdiction." *Id.* at 32, 36.

After listening to Mr. Hameen's exchange with the court, the government asked whether Mr. Hameen would consent to a competency evaluation. *Id.* at 42–43. Mr. Hameen objected. The government then formally moved for a competency exam, which the court granted. *Id.* at 43-46; Doc. 36.

The court was "concerned with some of the rambling, too," but noted that Mr. Hameen had no history of serious mental problems. Doc. 52 at 45. The court thus found Mr. Hameen knowingly and voluntarily waived his right to counsel and could represent himself with the Federal Defender's Office as standby counsel, contingent on Mr. Hameen being found competent. *Id.* at 46–47.

The arraignment followed. *Id.* at 49. When Mr. Hameen refused to enter a plea, the court entered a not guilty plea on his behalf. *Id.* at 50.

## C.  Competency

Less than a week after the *Faretta* hearing, Mr. Hameen moved to discharge the Federal Defender's Office as standby counsel. Doc. 32. Mr. Hameen complained, *inter alia*, that the attorney had been unwilling to ask for a copy of "the contract" between Mr. Hameen and the federal

government. *Id.* at 3. The court took the request under advisement pending Mr. Hameen's competency evaluation. Doc. 38.

During the status hearing, held before the competency evaluation, the district court noted that Mr. Hameen was "making it clear . . . why the government [was] entitled to a competency exam." Doc. 80 at 2–3, 48. The court informed Mr. Hameen that although it believed him to be intelligent, he had "made enough comments that [were] not rational and contrary to law and fact and reality that ma[d]e the Court believe that a competency evaluation [was] warranted," *id.* at 92–93; *id.* at 98 ("But, see, that's one of those things that you say that makes us think that you need a competency examination."). Thus, the "circumstances warrant[ed] a competency exam," although the court also commented that it was "confident" Mr. Hameen would be found competent and would be permitted to represent himself. *Id.* at 93, 106; Doc. 66.

At the competency hearing, the court-appointed doctor testified he believed Mr. Hameen had an adequate understanding of the charges, had an adequate ability to assist in his defense, and was competent to stand trial. Doc. 178 at 4, 7. Based on the doctor's testimony and a report of his findings, the court found Mr. Hameen was competent to proceed and

should be permitted to represent himself. Doc. 178 at 15; Doc. 90-1; Doc 93.

## D.    Mr. Hameen's Request for Representation

After permitting the Federal Defender's Office to withdraw, Doc. 178 at 22–23, the court appointed attorney Patrick Korody as standby counsel on October 4, 2018. Doc. 96. Trial was scheduled for December 11, 2018. Doc. 187.

On December 10, 2018, Mr. Korody moved to withdraw because Mr. Hameen had purportedly added him as a defendant to a civil lawsuit. Doc. 219. The next day, before trial, the district court denied the motion. Doc. 477 at 13–14. Moments before the jury was to be brought in, however, Mr. Hameen expressed that he could not represent himself. *Id.* at 52. He explained that he was not "legally sufficient to . . . handle this jury selection process"; he was "not in any position to represent [him]self at this stage"; and he "need[ed] an attorney to handle . . . the balance of [the] proceedings." *Id.* at 58–60, 69. The district court agreed to appoint counsel. *Id.*

### E.  Change of Counsel Shortly Before Trial and Partial Denial of Defense Counsel's Continuance Motion

The court appointed attorney Paul Shorstein to represent Mr. Hameen on December 12, 2018, and set the trial for January 29, 2019. Doc. 477 at 72, 75; Doc. 228. In early January, Mr. Hameen moved to dismiss Mr. Shorstein. Doc. 238 at 1. The court ordered Mr. Shorstein to remain as counsel. Doc. 243. But later that month, Mr. Shorstein filed a motion to withdraw as counsel under seal. Doc. 255. The court granted that motion and appointed attorney Douglas Clifton on January 28, 2019. Doc. 266. The court continued the trial to February 11, 2019, giving Mr. Clifton two weeks to prepare. *Id.*[2] Mr. Clifton subsequently moved to continue the trial for 21 days, until March 4, 2019. Doc. 272. The district court partially granted the motion, scheduling the trial for February 26, 2019. Doc. 277.

---

[2]  On January 11, 2019, the Supreme Court granted certiorari in *Rehaif v. United States,* 139 S.Ct. 914 (2019).

## F.    February 2019 Trial

### 1.    Government's case-in-chief

Mr. Hameen was arrested in the early morning outside a motel located in a high-crime area of Jacksonville. Doc. 347 at 35–36. The motel had a policy against trespassing and loitering. *Id.* at 56.

Earlier that night, the motel's manager saw Mr. Hameen visit Room 117 and told to him leave. Mr. Hameen left the property but returned. *Id.* at 55, 58. Around 1:00 to 1:30 AM, the manager saw Mr. Hameen on the motel's driveway near the front of the property. The manager again asked Mr. Hameen to leave, but Mr. Hameen refused. Using a baton, the manager flagged down a passing police car. *Id.* at 36, 59–60, 62, 64.

The officers recognized the manager and pulled in. Mr. Hameen was unsteady on his feet, and his speech was slurred. *Id.* at 36–37, 41, 97. He wore jeans and a black heavy coat; nothing in his body language indicated that he was carrying a weapon. *Id.* at 112.

The officers told Mr. Hameen that he needed to leave. He did not, so an officer attempted to arrest him for trespassing. *Id.* at 43. When the

officer grabbed Mr. Hameen's arm, Mr. Hameen turned away. The officer grabbed Mr. Hameen's arm again and felt what he recognized to be gun. As officers took Mr. Hameen to the ground, a loaded gun fell out of Mr. Hameen's jacket. *Id.* at 43–46. The firearm and ammunition had no latent prints. *Id.* at 128.

Mr. Hameen stipulated that he had been "convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is a felony offense, and was prohibited from possessing a firearm on February 7, 2018," the date alleged in the indictment. Doc. 347 at 182. The stipulation, which was signed with counsel, did not address whether Mr. Hameen knew he was a convicted felon at the time of the alleged possession.  Doc. 310.

Bureau of Alcohol, Tobacco, and Explosives (ATF) Special Agent Jesse Hooker testified he determined, based on markings on the firearm, among other things, that the firearm had been manufactured in California. He opined that if the firearm had been recovered in Florida, it had "affected" interstate commerce. *Id.* at 164, 169–70, 176–78.

### 2.    Mr. Hameen's defense

Mr. Hameen testified he was a drug user and had gone to the motel to buy drugs. He purchased a "twist," which is a mixture of heroin, fentanyl, and morphine, and went to Room 117, where an acquaintance was staying, to use it. The manager arrived and told Mr. Hameen to leave. Doc. 348 at 24, 28–30.

On his way out, Mr. Hameen took a black jacket—not his—from a pile of clothes in the room because he was having chills. Mr. Hameen did not know about the gun that later fell out of the jacket he was stopped by the police. *Id.* at 30–31, 36–37, 39. Nor did he know how a piece of paper with his name on it ended up in the jacket. *Id.* at 51-52.

Mr. Hameen admitted he had been convicted of ten prior felony offenses, most involving drugs, in the preceding decade. *Id.* at 63–64.[3] Mr. Hameen was not asked, and did not testify, about whether he knew he was a convicted felon at the time of his alleged possession or knew he was not supposed to have a firearm. Nor was there any testimony

---

[3]    Mr. Hameen also admitted the fact of each conviction, date, and nature of the offense. *Id.*

regarding the length of the sentences imposed for Mr. Hameen's prior convictions.

### 3.    Motion for judgment of acquittal

Mr. Hameen moved for a judgment of acquittal. Doc. 347 at 195–97; Doc. 348 at 132. He argued that § 922(g) violated the Commerce Clause and that the government had failed to meet its burden of proof on each element of the offense, including the interstate nexus element. Doc. 347 at 195–97. The district court denied the motion. *Id.* at 202–04; Doc. 348 at 11–12; Doc. 132.

### 4.    Jury instructions and verdict

The district court instructed the jury that to find Mr. Hameen guilty, the government had to prove "[o]ne, the defendant knowingly possessed a firearm, in or affecting interstate or foreign commerce, as charged; and two, before possessing the firearm, the defendant had been convicted of a felony, a crime punishable by imprisonment for more than one year." Doc. 348 at 92.

The jury was not asked to decide whether Mr. Hameen knew he was a convicted felon at the time of the offense, whether the prohibited activity (possession) substantially affected interstate commerce, or

whether Mr. Hameen qualified for the ACCA enhancement. *Id.* No objections were made to the jury instructions. The jury's verdict found Mr. Hameen guilty of possession of a firearm by a convicted felon in violation of § 922(g). Doc. 317.

## G. Post-Trial Competency Concerns and Mr. Hameen's Reiteration that He Required Counsel

Before sentencing, while still represented by Mr. Clifton, Mr. Hameen filed a *pro se* interlocutory appeal, arguing Mr. Clifton had been ineffective at trial. *See* Docs. 320, 325.[4] Mr. Clifton moved to withdraw on May 14, 2019, a little more than two weeks before the scheduled June 3, 2019 sentencing. Doc. 353. The district court granted the motion and canceled the sentencing. *Id.*

The district court reminded the parties it had warned Mr. Hameen before the trial that "if he took any action to cause another lawyer to withdraw . . . at that point he would have forfeited his right to counsel and he would proceed *pro se*." Doc. 508 at 6. The court admonished Mr. Hameen and suggested that he begin to prepare for his sentencing. *Id.* at 7–8.

---

[4]    Mr. Hameen later dismissed the appeal. *See* Appeal No. 19-10937.

Mr. Hameen responded that he "suffer[ed] with mental health issues" and there was "no way in the world" he could be ready. *Id.* at 8. He informed the court that his medication had been changed; he was working with mental health professionals to sort out the right formula; and he did not know whether he was "going or coming" because his body had not yet responded to the medication. *Id.* at 9.

The court responded by asking whether Mr. Hameen needed another competency evaluation. *Id.* When asked if it had concerns about Mr. Hameen's competency, the government suggested holding off on a second competency evaluation until Mr. Hameen's counsel issue was resolved. *Id.* at 10.

Not fully convinced, the court wondered "whether he would be able to assist counsel even if the Court appointed counsel to him." *Id.* at 11. Ultimately, however, the court was not sure how "genuine" Mr. Hameen's issues were and set the matter for a status hearing the next week. *Id.*

At the May 23, 2019 status hearing, the court asked Mr. Hameen if he wanted a lawyer at sentencing. Mr. Hameen responded that he "probably would have to have an attorney." Doc. 509 at 9. The district court appointed attorney Christopher Eric Roper to represent Mr.

Hameen and set sentencing for September 3, 2019. *Id.* at 38; Doc. 357.

The court did not inquire about Mr. Hameen's medication or mental

health treatment, nor did it address the issue of his competency.

## H. Mr. Hameen Proceeds *Pro Se* Despite Mental Health Concerns and Without a Second *Faretta* Hearing

In early August 2019, Mr. Hameen, through counsel, filed a motion

indicating he no longer wished to be represented. Doc. 362. At a hearing

on August 14, 2019, Mr. Hameen explained that Mr. Roper had refused

to accept his written objections to the Presentence Investigation Report

(PSR). Doc. 503 at 4. He also stated that "with the latest developments

in the *Rehaif* case, I actually have standing to claim that I'm actually

innocent because of the intervening change of law." *Id.* at 6.[5] The court

asked Mr. Hameen to confirm that he wanted to represent himself at

sentencing. Mr. Hameen initially answered, "I'm going to represent my

corporation." *Id.* at 6. After the court reminded him he was a person, not

a corporation, Mr. Hameen said, "I'm going to put my written objections

in—on behalf of me the person." *Id.* at 6–7.

---

[5]     *Rehaif*, 139 S.Ct. 2191, issued on June 21, 2019.

The court then asked the government whether it should repeat the *Faretta* inquiry that had been performed over a year earlier. *Id.* at 7. The government responded that the previous *Faretta* inquiry was adequate, "especially since Mr. Hameen has . . . acknowledged that he is aware of *Rehaif* and the change in the law that—that has an effect—potential effect on this case." *Id.*

The court then asked Mr. Roper whether he had any concerns about Mr. Hameen's ability to represent himself. *Id.* Mr. Roper expressed no concerns. *Id.* at 8.

The district court summarized that earlier in the case there had been a "lengthy" *Faretta* inquiry and that during the course of the proceedings the court had observed Mr. Hameen to be a "very intelligent man" who understood the penalties he faced and his rights. *Id.* at 8–9. It continued that Mr. Hameen had shown familiarity with the "sentencing process and with the . . . change in landscape in terms of recent changes in applicable law, and so he's certainly shown that he has the ability to represent himself." *Id.* at 9. The court thus permitted Mr. Roper to withdraw as counsel, but instructed him to remain as standby counsel. *Id.* at 19; Doc. 364.

The district court did not discuss with Mr. Hameen the dangers of representing himself for the remainder of the proceedings. Nor did it consider the changes since the *Faretta* hearing more than a year earlier, including Mr. Hameen's previous insistence that he needed a lawyer, the revelation that he suffered from mental health issues, and the disorientation caused by his prescription drug treatment.

## I.    Post-Trial *Rehaif* Arguments and Decision

Also at the August 14, 2019 hearing, Mr. Hameen filed voluminous objections focusing on the Supreme Court's June 2019 decision in *Rehaif*. Docs. 365–69. He explained that he could not file them earlier because counsel had refused to accept them; but Mr. Hameen did not want to risk waiving the objections. Doc. 503 at 18, 20–22. In attempting to explain his objections, Mr. Hameen argued *Rehaif* required that he know the firearm affected interstate commerce. Doc. 503 at 26–30.

On October 10, 2019, five days before sentencing, Mr. Hameen filed another document expressly arguing that, in light of *Rehaif*, his constitutional rights had been violated because the government had failed to allege or prove that he knew he was a convicted felon at the time of his firearm possession. Doc. 421 at 1–2. Mr. Hameen attached a copy

17

of an indictment and superseding indictment charging another defendant with violating § 922(g)(1). Docs. 421-1, 421-2. The superseding indictment added language indicating that the defendant knew he previously had been convicted of a crime punishable by imprisonment for a term exceeding one year. Doc. 421-2 at 2. The superseding indictment had been filed on September 26, 2019, just two weeks earlier. *Id.*

Before sentencing, the government addressed Mr. Hameen's most recent *Rehaif* document, which the court construed as a motion for a judgment of acquittal or, in the alternative, a motion for a new trial. Doc. 475 at 44; Doc. 476 at 9, 54. The government argued that the court should not consider Mr. Hameen's motion because it was untimely and he had not shown excusable neglect. Doc. 475 at 45. The government then argued that if the court were to consider Mr. Hameen's motion, it should be denied. *Id.* at 47. If the jury had been instructed on the element, the government hypothesized, it would have proven his knowledge through "facts and circumstances in the record before the jury . . . as well as additional evidence it would have been allowed to prove." *Id.* The government also argued that the "trial record" contained "overwhelming

uncontroverted evidence proving that [Mr. Hameen] knew he was a convicted felon." *Id.*

The district court announced that "given the issue with regard to knowledge of the prior convictions," it would require proof of Mr. Hameen's prior convictions in the PSR. *Id.* at 55–56.[6] Those convictions mattered, the district court stated, because they included several crimes for which Mr. Hameen had been sentenced to more than one year. It was "on that basis" that the court was prepared to find that the jury outcome would be no different. *Id.* at 56–57.

The court acknowledged the government's argument that the evidence was sufficient based on Mr. Hameen's stipulation at trial and his admission during cross examination that he had been convicted of felonies. *Id.* at 58. But it concluded:

> [G]iven the strange position that we are in and *the absence of any temporal information with the jury or based on what was presented to the jury because there wasn't any discussion of the length of sentences or whether he knew that those convictions disqualified him under the law*, where—we are in the odd position that the—that the undeniable fact that his sentences carried a term of imprisonment exceeding one year is what changes that.

---

[6]    Mr. Hameen did not stipulate to the prior convictions listed in the PSR. *Id.* at 53–55, 72.

*Id.* (emphasis added).

Two days later, when sentencing resumed, the court reminded Mr. Hameen that in response to his *Rehaif* motion the government had argued (1) his motion was untimely, and (2) he was not entitled to relief. Doc. 476 at 9. "One of [those] arguments," the court explained, "required proof, which [the government was] about to present." *Id.* The government then presented evidence matching Mr. Hameen's fingerprints to each of the judgments of conviction, and the judgments were admitted. *Id.* at 11, 14, 19, 22, 26, 31–35, 41–42.

After renewed argument, the court announced its decision. First, the court rejected Mr. Hameen's argument that his indictment was defective. It stated, however, that his argument regarding the "absence of the 'knowing' element in the grand jury indictment is preserved." *Id.* at 55–57.

Second, the court found that Mr. Hameen's motion for judgment of acquittal or new trial was untimely. *Id.* at 57.

Third, the court addressed the *Pioneer*[7] factors to determine whether to consider the untimely motion. It found the delay unreasonable and "consistent with Mr. Hameen's pattern of raising issues at the eleventh hour." Doc. 476 at 61. The court further stated that Mr. Hameen's only basis for delay was his *pro se* status, and he was not acting in good faith. *Id.* at 61–62. Finally, the court concluded that precluding Mr. Hameen from raising the arguments would not prejudice him because the jury "heard ample evidence with regard to Mr. Hameen's numerous felony convictions." *Id.* at 62. The court did not discuss whether the government would be prejudiced by consideration of Mr. Hameen's motion; nor did it mention Mr. Hameen's recent discovery that the government was superseding indictments in other cases based on *Rehaif*.

The court continued that, given the evidence at trial and drawing all inferences in favor of the government, a reasonable jury could have found beyond a reasonable doubt that Mr. Hameen knew he was a convicted felon when he possessed the firearm. *Id.* at 62–63.

---

[7]     *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

After overruling Mr. Hameen's objections to the criminal history in his PSR and finding his convictions were reflected in the judgments submitted by the government, the court listed Mr. Hameen's previous sentences of imprisonment. In total, the court observed, Mr. Hameen had been sentenced to a term of imprisonment in excess of one year on seven occasions prior to his firearm possession in February 2018. Doc. 476 at 63–65. "And under those circumstances," the court stated, "if the government had been required to present evidence of Mr. Hameen's knowledge . . . of his status of ineligibility to carry a firearm because he had previously been convicted of offenses carrying a term of imprisonment in excess of one year, there's no . . . reasonable probability that the jury would a have reached a different verdict." *Id.* at 65–66.

The court then stated Mr. Hameen's stipulation at trial that he previously had been convicted of a felony offense was "independently . . . sufficient for the jury to sustain a verdict, even after the *Rehaif* decision." *Id.* at 66. For those reasons, the court explained, even if Mr. Hameen's motion for a new trial or for a judgment of acquittal had been timely, the court would deny it. *Id.* at 66–67.

### J.    Sentencing Issues

As relevant to this appeal, the district court adopted, over Mr. Hameen's objections, the following recommendations of the PSR regarding Mr. Hameen's ACCA eligibility and guidelines calculation.

First, the PSR calculated Mr. Hameen's base offense level as 24 under United States Sentencing Guidelines (USSG) § 2K2.1(a)(2) because Mr. Hameen had committed the § 922(g) offense after sustaining two felony convictions for a "crime of violence" or "controlled substance offense." Doc. 454 at 7. Specifically, it stated Mr. Hameen previously had been convicted of Florida aggravated assault with a deadly weapon, Florida sale or delivery of cocaine, and Florida sale or delivery of heroin. *Id.*

Mr. Hameen objected, arguing that Florida aggravated assault was not a crime of violence and that Florida drug sale was not a controlled substance offense. Doc. 476 at 82–86. The district court rejected those arguments based on this Court's precedent. *Id.* at 83 (aggravated assault), 86 (sale or delivery of drugs).

Second, the PSR recommended increasing Mr. Hameen's offense level to 34 under USSG § 4B1.4(b)(3)(A) because Mr. Hameen had three

prior convictions for a violent felony or serious drug offense—the same convictions that triggered the § 2K2.1(a)(2) base offense level calculation—and he had committed the § 922(g) offense in connection with a controlled substance offense.[8] Doc. 454 at 7–8. Mr. Hameen objected to the an armed career criminal classification and the enhancement under § 4B1.4(b)(3)(A). The district court overruled the objections. Doc. 476 at 73, 95–97.

Offense level 34 and criminal history category VI yield a guidelines range of 262 to 327 months' imprisonment. Doc. 476 at 101. The district court varied downward and imposed the mandatory-minimum sentence under the ACCA, 180 months. *Id.* at 126–27.

---

[8]    Police found drugs on Mr. Hameen when he was arrested. Doc. 454 at 7–8. The district court found that he possessed the firearm in connection with his possession with intent to distribute the drugs. Doc. 476 at 91–92.

## Standards of Review

I.    This Court reviews de novo whether a defendant validly waived the right to counsel as a mixed question of law and fact. *United State v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995). "On direct appeal, the Government bears the burden of proving the validity of the waiver." *Id*. The defendant need not show prejudice to obtain a reversal because "a trial court's acceptance of an invalid waiver of the Sixth Right to counsel is not subject to harmless error analysis. *Id*. at 1090 n.5.

II.    Challenges to an indictment for failure to state an offense are reviewed de novo. *See United States v. Sperrazza*, 804 F.3d 1113, 1118–21 (11th Cir. 2015). An untimely motion to dismiss an indictment is reviewed for plain error, "unless the 'basis for the motion' was not 'reasonably available' before trial." *Id*. at 1119 (quoting Fed. R. Crim. P. 12(b)(3)). Questions of subject matter jurisdiction are reviewed de novo. *United States v. McIntosh*, 704 F.3d 894, 900 (11th Cir. 2013).

III–IV.  This Court reviews excusable neglect decisions for an abuse of discretion, and "application of an incorrect legal standard is an abuse of discretion." *Advanced Estimating System, Inc. v. Riney*, 77 F.3d 1322, 1325 (11th Cir. 1996).

A district court's decision regarding a motion for a new trial is reviewed for an abuse of discretion. *United States v. Hernandez*, 433 F.3d 1328, 1336 (11th Cir. 2005). Jury instructions that omit an element of the offense, when not timely challenged before the district court, are subject to plain-error review. *United States v. Kramer*, 73 F.3d 1067, 1074 (11th Cir. 1996).

The sufficiency of the evidence is reviewed de novo, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Lumley*, 135 F.3d 758, 759 (11th Cir. 1998). Although this Court has reviewed specific sufficiency-of-the-evidence arguments not timely raised below for plain error, *see United States v. Zitron*, 810 F.3d 1253, 1260 (11th Cir. 2016), Mr. Hameen maintains that arguments in support of his claim made in the district court should be reviewed de novo. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

V.    The constitutionality of a statute is reviewed de novo. *See United States v. Cespedes*, 151 F.3d 1329, 1331 (11th Cir. 1998).

VI.–VIII.    This Court reviews de novo whether a prior conviction qualifies as an ACCA predicate and whether an ACCA sentence is

unconstitutional. *See United States v. Smith*, 775 F.3d 1262, 1265 (11th Cir. 2014).

## SUMMARY OF THE ARGUMENTS

I.    Mr. Hameen did not knowingly and voluntarily waive his right to counsel in August 2019, and the district court therefore erred in permitting him to proceed *pro se* for the remainder of the proceedings. As an initial matter, the district court failed to conduct a *Faretta* hearing. Although the magistrate judge had conducted a hearing in 2018, the court should have conducted a second hearing because the circumstances had changed significantly over the course of the year. *See United States v. Hantzis*, 625 F.3d 575, 581 (9th Cir. 2010); *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004).

More importantly, Mr. Hameen's waiver was invalid because the totality of the circumstances demonstrates that he did not understand the dangers of self-representation or choose those dangers voluntarily. Significantly, the district court ignored Mr. Hameen's mental health problems when it erroneously permitted him to proceed *pro se*. Additionally, Mr. Hameen repeatedly indicated he required counsel and requested to proceed *pro se* only when he felt pressured to ensure that

*Rehaif* was raised before the district court. Under the circumstances, Mr. Hameen's waiver was invalid, requiring vacatur of his conviction and sentence.

II–IV.    In *Rehaif*, the Supreme Court held that to convict a defendant under 18 U.S.C. § 922(g) the government must prove the defendant knew he possessed a firearm and he knew he had the relevant status when he possessed it. 139 S.Ct. at 2194. Because the indictment failed to charge, and the government failed to prove, that Mr. Hameen knew he was a convicted felon at the time of the firearm possession, his conviction should be vacated.

As an initial matter, the district court erred by refusing to dismiss Mr. Hameen's indictment, which omitted an essential element of the offense.  De novo review applies because, although Mr. Hameen did not raise this argument pre-trial, the claim was not reasonably available because the courts of appeals were unanimous that the government need not prove a defendant's knowledge of his prohibited status in a § 922(g) prosecution. Moreover, the missing element was a jurisdictional defect because his indictment did not state an offense against the United States.

Recognizing that this Court has held to the contrary, Mr. Hameen respectfully preserves the issue for further review.

Next, the district court abused its discretion in finding that Mr. Hameen had not shown excusable neglect for his untimely *Rehaif* motion for judgment of acquittal or new trial. The district court failed to consider whether the government was prejudiced by consideration of Mr. Hameen's motion, which is a factor of "primary" importance to the excusable neglect analysis. *See Riney*, 77 F.3d at 1325 (citing *Pioneer*, 507 U.S. at 395). Instead, the court implicitly considered the merits of Mr. Hameen's motion by asking if Mr. Hameen would be prejudiced by failure to consider it. The court's misapplication of the law constituted an abuse of discretion.

The court not only should have considered Mr. Hameen's motion for judgment of acquittal or new trial; it should have granted it. Mr. Hameen's knowledge of his status was not charged or proven at trial. No witness—including Mr. Hameen—testified that Mr. Hameen knew his relevant status at the time of the offense. Nor was evidence presented at trial regarding the length of Mr. Hameen's prior sentences. Accordingly,

the district court should have granted his motion for judgment of acquittal.

Alternatively, the district court abused its discretion in denying the motion for new trial because it applied the wrong standard by construing the evidence in the light most favorable to the government.

Even if plain error review applies, *Rehaif* makes plain that the indictment and jury instructions in Mr. Hameen's case erroneously omitted this essential element. *Rehaif* also makes plain that the evidence is insufficient to sustain Mr. Hameen's conviction. The cumulative effect of these errors violated his substantial rights and infected the fairness, integrity, and public reputation of the proceedings. Accordingly, Mr. Hameen's conviction should be vacated.

V.    Mr. Hameen's conviction also should be vacated because § 922(g) is unconstitutional, facially and as applied to his intrastate possession of a firearm. The statute exceeds Congress's authority under the Commerce Clause by not requiring the prohibited criminal activity (i.e., possession) substantially affect interstate commerce.

Here, an ATF agent testified only that the firearm Mr. Hameen possessed in Florida had been manufactured in California. The

government thus failed to establish any connection, let alone a substantial connection, between the charged possession offense and interstate commerce. Mr. Hameen recognizes this Circuit's precedent foreclosing the issue, but preserves this argument for further review.

VI.    Mr. Hameen's prior conviction for aggravated assault under Fla. Stat. § 784.021 does not qualify as a "violent felony" under the ACCA or a "crime of violence" under the sentencing guidelines. Mr. Hameen acknowledges that this Court previously held that § 784.021 has "as an element the . . . threatened use of physical force against the person of another." *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1338 (11th Cir. 2013), *abrogated on other grounds by United States v. Hill*, 799 F.3d 1318 (11th Cir. 2015). Nevertheless, Mr. Hameen contends that *Turner* was wrongly decided under then-binding Circuit precedent because Florida aggravated assault may be committed with a mens rea of recklessness, and intervening Supreme Court precedent has further undermined *Turner*'s analysis. *See United States v. Golden*, 854 F.3d 1256, 1257–60 (11th Cir. 2017) (Jill Pryor, J., concurring in the result).

Moreover, the Supreme Court recently granted certiorari in *Borden v. United States*, 140 S.Ct. 1262 (2020), to decide whether the ACCA's

elements clause encompasses crimes—like Fla. Stat. § 784.021—that may be committed with a mens rea of mere recklessness. Accordingly, Mr. Hameen respectfully maintains that his Florida aggravated assault conviction is not an ACCA predicate. Nor may his conviction be used to increase his base offense level under USSG § 2K2.1(a)(2) because it does not qualify as a crime of violence. Acknowledging that binding precedent holds otherwise, Mr. Hameen respectfully preserves this issue for further review.

VII. Mr. Hameen's two prior Florida drug convictions, under Fla. Stat. § 893.13, do not qualify as serious drug offenses under the ACCA or controlled substance offenses under the sentencing guidelines because § 893.13 does not require that the defendant know the illicit nature of the substance. Mr. Hameen acknowledges this Court's decision to the contrary in *United States v. Smith*, 775 F.3d 1262, 1266–67 (11th Cir. 2014), and he thus preserves this issue for further review.

VIII. Mr. Hameen's ACCA sentence violates the Fifth and Sixth Amendments because he was sentenced above § 924(a)(2)'s 10-year statutory-maximum, and the ACCA's requirements—that he had three prior "serious drug offense" or "violent felony" convictions that were

"committed on occasions different from one another"—were not charged in the indictment and proven to a jury beyond a reasonable doubt. Given current precedent, Mr. Hameen preserves this violation of his constitutional rights for further review.

ARGUMENTS AND CITATIONS OF AUTHORITY

## I.    Mr. Hameen Did Not Knowingly, Intelligently, and Voluntarily Waive His Right to Counsel After Trial.

In August 2019, the district court granted Mr. Hameen's request to proceed *pro se* without addressing his mental illness and despite the significant changes that occurred over the year since the *Faretta* hearing. Under these circumstances, Mr. Hameen's waiver of counsel was invalid, and the case should be remanded for further proceedings.[9]

---

[9]    "Because a trial court's acceptance of an invalid waiver of the Sixth Amendment right to counsel is not subject to harmless error analysis, [this Court] do[es] not inquire into whether a different result would have obtained had Appellant been represented by counsel . . . ." *Cash*, 47 F.3d at 1090 n.5 (citing *United States v. Fant*, 890 F.2d 408, 410 (11th Cir. 1989)). In *United States v. Wilson*, 2020 WL 6277720 (11th Cir. Oct. 27, 2020), this Court conducted a harmless error analysis, but the issue there did *not* concern the defendant's knowing and voluntary waiver of counsel, which had occurred earlier in the proceeding. *Wilson*'s harmless error analysis concerned the district court's refusal to appoint *different* standby counsel on the day of trial. *Id.* at 17–18.

Under the Sixth Amendment, defendants have the right to counsel and the right to represent themselves. *United States v. Owen*, 963 F.3d 1040, 1048 (11th Cir. 2020). To waive the right to counsel, a defendant must clearly and unequivocally assert his right of self-representation, and that waiver must be knowing, voluntary, and intelligent. *Id.* The "ideal method of assuring that a waiver is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation." *Id.* at 1049.

In July 2018, the court below conducted a *Faretta* hearing, and Mr. Hameen waived his right to counsel. But the court should have conducted a second *Faretta* hearing in August 2019. By that time, the circumstances had significantly changed, vitiating the validity of Mr. Hameen's previous waiver. *See Hantzis*, 625 F.3d at 581 ("The essential inquiry is whether circumstances have sufficiently changed since the date of the *Faretta* inquiry that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel."); *McBride*, 362 F.3d at 367 (collecting cases discussing when second *Faretta* hearing is needed).

The court questioned everyone except Mr. Hameen regarding his competency to waive his right to counsel. The "ultimate test" of whether a waiver is valid, however, "is the defendant's understanding." *Owen,* 963 F.3d at 1049 (quoting *Strozier v. Newsome*, 926 F.2d 1100, 1105 (11th Cir. 1991)). The defendant must "underst[an]d the risks of self-representation and freely choose to face them." *Id.* (internal quotation marks omitted). In this regard, this Court considers eight factors:

> (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which that counsel aided the defendant; (7) mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of the trial.

*Id.* (citing *United States v. Stanley*, 739 F.3d 633, 646 (11th Cir. 2014)). The totality of these factors demonstrates that Mr. Hameen's waiver of counsel was invalid.

The first factor strongly favors Mr. Hameen. He has significant mental health issues, including PTSD and a personality disorder. *See,*

*e.g.*, PSR at 33–34; Doc. 476 at 134. Medical records from treatment efforts indicate he was "combative, paranoid, disruptive, and aggressive." PSR at 34. And Mr. Hameen exhibited that same irrational behavior during the court proceedings leading up to August 2019, as noted by the court and government on multiple occasions. *See, e.g.*, Doc. 52 at 42–43, 45; Doc. 80 at 48, 92–93, 98; Doc. 508 at 9–11.

This Court has explained that if "a defendant's irrational or uncooperative conduct is the result of 'serious mental illness, confusion, or any other condition indicative of a lack of understanding,' [the district court] should prohibit the defendant from proceeding *pro se* even if the defendant affirmatively requests to do so." *United States v. Cartman*, 607 F. App'x 888, 890 (11th Cir. 2015) (quoting *United Sates v. Garey*, 540 F.3d 1253, 1267 n.9 (11th Cir. 2008) (en banc)). The court below thus should not have granted Mr. Hameen's request to proceed *pro se. See id.*

Importantly, the court initially found Mr. Hameen's waiver of counsel valid—despite Mr. Hameen's disconcerting statements in open court—because it believed Mr. Hameen had no history of mental health issues. Doc. 52 at 45. Months later, the court learned that Mr. Hameen was undergoing mental health treatment and experiencing

disorientation. Doc. 508 at 9. The new information was concerning enough that the court suggested another competency exam might be required. *Id.* at 11. But the court never followed up on this concern. Instead, a few months later, it granted Mr. Hameen's request to represent himself without considering his mental health or competency.

Regarding the second factor, Mr. Hameen was represented by several lawyers before and during trial. Normally, that might favor the validity of the waiver. But here, Mr. Hameen's difficult and "obstructionist" behavior with those lawyers simply emphasizes that his mental health prohibited him from knowingly and voluntarily waiving counsel. *See Garey*, 540 F.3d at 1267 n.9.

The third and fourth factors also favor Mr. Hameen. While he claimed he understood the penalties, Mr. Hameen's conduct demonstrated he did not fully understand the charges, proceedings, or courtroom rules. *See, e.g.*, Doc. 51 at 6, 36; Doc. 32 at 3.

As for the fifth factor, Mr. Hameen claimed to have represented himself previously, but he had no experience with felony trials. Doc. 52 at 23. And he expressly stated he needed counsel at trial *and* sentencing. *See* Doc. 477 at 58–60, 69; Doc. 508 at 8; Doc. 509 at 9.

Concerning the sixth factor, the district court appointed standby counsel. The record, however, does not establish whether counsel closely assisted Mr. Hameen. Nevertheless, even if this factor militates against Mr. Hameen, it does not change the totality of the analysis.

Finally, the seventh and eighth factors support Mr. Hameen. He was placed in an untenable position. He knew that *Rehaif* changed the law underlying his conviction. But his attorney refused to raise the issue. He thus was forced to request to proceed *pro se* so as not to waive critical arguments. Accordingly, Mr. Hameen's waiver of counsel was not an attempt to delay the proceedings. It was an attempt to ensure that *Rehaif* and its impact on his conviction was raised and addressed by the district court.

In sum, Mr. Hameen's August 2019 waiver of counsel was invalid. Although Mr. Hameen is intelligent, his mental illness, along with the pressure he felt to preserve an important issue, resulted in an unknowing and involuntary waiver. His conviction and sentence should thus be vacated and the case remanded for further proceedings.[10]

---

[10]    Mr. Hameen maintains de novo review applies. But reversal is required even if plain error review is applied. *See Owen*, 963 F.3d at 1048 n.5. The decision to allow Mr. Hameen to represent himself was plainly

## II.    *Rehaif* Requires Vacatur of Mr. Hameen's Conviction.

In *Rehaif*, the Supreme Court held that to convict a defendant under § 922(g) the government must prove the "defendant knew he possessed a firearm and also that he knew he had the relevant status . . . when he possessed it." 139 S.Ct. at 2194. Mr. Hameen's indictment did not allege, the jury was not instructed to find, and the government did not prove, that he knew he was a convicted felon when he allegedly possessed the firearm. His conviction therefore should be vacated.

*Rehaif* was decided after Mr. Hameen's trial but before sentencing. Mr. Hameen's counsel failed to argue that *Rehaif* impacted Mr. Hameen's case. But once Mr. Hameen was permitted to represent himself, he raised multiple objections based on *Rehaif*. As explained below, the district court's resolution of those claims was erroneous.

---

erroneous in light of *Cartman, Garey,* and the facts of this case. The plain error affected Mr. Hameen's substantial rights because but-for the error, he would have been afforded the assistance of counsel to make his *Rehaif* arguments sooner, avoiding the court's "excusable neglect" finding. *See* Part II.B, *infra*. Competent counsel also would have objected to the district court's erroneous application of the motion for new trial standard, and there is a reasonable probability that under the correct standard the motion would have been granted. *See id.*

## A.    The District Court Erred in Declining to Dismiss Mr. Hameen's Indictment.

Acknowledging this Court's decision to the contrary in *United States v. Moore*, 954 F.3d 1322, 1332–37 (11th Cir. 2020), Mr. Hameen respectfully preserves this issue for further review.

### 1.    De novo review applies

A claim that an indictment is defective should be raised before trial unless the basis for the motion is not then reasonably available. *See Sperrazza*, 804 F.3d at 1118–19. Here, Mr. Hameen's claim was not reasonably available before his trial because the federal appellate courts unanimously agreed knowledge of one's status was not an element of § 922(g). *Cf. Reed v. Ross*, 468 U.S. 1, 17 (1984) (explaining, in habeas corpus context, that claim was not "reasonably available" if decision on which it is based "overturn[s] a longstanding and widespread practice to which [the Supreme Court] has not spoken, but which a near-unanimous body of lower court authority has expressly approved" (alteration adopted) (internal quotation marks omitted)).

The Supreme Court granted certiorari in *Rehaif* in January 2019, shortly before Mr. Hameen's February 2019 trial. At that time, Mr. Hameen was represented by counsel who failed to recognize the grant's

significance. But as soon as Mr. Hameen was permitted to represent himself after the June 2019 *Rehaif* decision, he raised *Rehaif*. And the district court agreed Mr. Hameen's argument regarding the indictment was "preserved." De novo review thus applies.[11]

### 2.    The indictment is facially deficient

The indictment did not allege that Mr. Hameen knew he was a convicted felon at the time of the possession, *see* Doc. 1, and thus failed to state an essential element of the offense. *See United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015) (holding indictment deficient because it failed to allege essential mens rea element). This error violates Mr. Hameen's Fifth Amendment right to have a grand jury find "probable cause to support all the necessary elements of the crime" and his Sixth Amendment right to be informed "of the nature and cause of the accusation." *Id.* Accordingly, his indictment must be vacated.

### 3.    The indictment is jurisdictionally defective.

Additionally, the missing element deprived the district court of subject matter jurisdiction. In *Rehaif*, the Supreme Court made clear

---

[11]    Reversal is required even under plain error review. *See* Part II.C, *infra*.

that the government may prosecute and convict a defendant only under both §§ 922(g) and 924(a)(2). Section 922(g), standing alone, is not a federal crime. As the Supreme Court explained, § 922(g) states that "'[i]t shall be unlawful' for certain individuals to possess firearms. 139 S.Ct. at 2194. "A separate provision, § 924(a)(2)," the Court continued, "adds that anyone who '*knowingly* violates' the first provision shall be fined or imprisoned for up to 10 years." *Id.*

By specifying that a defendant may be convicted only if he "knowingly violates" § 922(g), the Court explained, Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." *Id.* at 2196. The Court thus interpreted § 924(a)(2) to require knowledge of one's § 922(g) status. Its holding also established that the two provisions must operate in tandem—§ 922 (g)(1) is not a freestanding criminal offense.

The indictment here does not cite or track the language of § 924(a)(2).[12] Accordingly, the indictment failed to charge an "offense[ ]

---

[12]    Mr. Hameen's case is distinguishable from *United States v. Brown*, 752 F.3d 1344, 1353 (11th Cir. 2014), because the indictment there "not only cite[d]" the criminal statute but "track[ed]" its language "in its entirety."

against the laws of the United States." 18 U.S.C. § 3231; *see, e.g., United States v. Izurieta*, 710 F.3d 1176, 1182–85 (11th Cir. 2013); *United States v. Peter*, 310 F.3d 709, 712–15 (11th Cir. 2002); *United States v. Meacham*, 626 F.2d 503, 509–10 (5th Cir. 1980). Acknowledging this Court's decision to the contrary in *Moore*, 954 F.3d at 1332–37, Mr. Hameen respectfully preserves the issue for further review.

**B.    The District Court Erred in Denying Mr. Hameen's Motion for Judgment of Acquittal or New Trial.**

**1.    The district court abused its discretion in determining that Mr. Hameen had not shown excusable neglect.**

The determination of whether a movant has shown excusable neglect for an untimely motion "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. Courts must consider "'the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Riney*, 77 F.3d at 1325 (quoting *Pioneer*, 507 U.S. at 395) (alterations adopted).

This Court has emphasized that "primary importance" should be "accorded . . . to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration." *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (1996). Focusing on the merits of the underlying motion rather than the proper excusable neglect factors constitutes an abuse of discretion requiring vacatur. *See Yang v. Bullock Financial Group, Inc.*, 435 F. App'x 842, 844 (11th Cir. 2011).

Here, the district court failed to consider whether the government was prejudiced by consideration of Mr. Hameen's motion. Instead, the court considered whether Mr. Hameen would be prejudiced by failure to consider it. That analysis not only omitted the primary factor of the nonmovant's prejudice, but also collapsed into an impermissible consideration of the merits of Mr. Hameen's argument. The court's misapplication of the law constituted an abuse of discretion. *See id.*

Moreover, the factors demonstrate that Mr. Hameen established excusable neglect. The first, and "primary," factor is the danger of prejudice to the nonmovant. Here, the danger of prejudice to the government was nominal. The government knew about *Rehaif* and its impact on Mr. Hameen's case. It acknowledged that the Court should

address *Rehaif* and proceed to sentencing only if necessary. Doc. 503 at 26. And Mr. Hameen had asserted in open court several weeks earlier that his *Rehaif* arguments were not based solely on the *Rehaif* dissent. The government thus cannot claim it was unfairly surprised by Mr. Hameen's argument. Indeed, the government did not argue it would be prejudiced by consideration of Mr. Hameen's motion. *See United States v. Montgomery*, 442 F.Supp.3d 875, 884 (W.D. Pa. 2020), *appeal pending* No. 20-1659 (finding defendants demonstrated excusable neglect for untimely *Rehaif* motion for new trial where, *inter alia*, government conceded it had not been prejudiced).

*Cheney* is informative. In that case, after an arbitration, the plaintiff filed an untimely request for a trial de novo. This Court found no prejudice to the nonmoving party where (1) the nonmoving party failed to argue it was prejudiced, (2) it was not "lulled" by the untimely filing, and (3) the record showed both parties expected to continue litigating. 71 F.3d at 850. Here, as in *Cheney*, the government failed to argue it would be prejudiced, it was not "lulled" because it knew about *Rehaif* and its impact on Mr. Hameen's case, and it expected to litigate the issue. This important factor thus weighs in favor of finding excusable neglect.

The second factor is the length of the delay and its potential impact on judicial proceedings. The district court found that Mr. Hameen did not raise this *Rehaif* argument until October 10, 2019, more than three months after *Rehaif* was decided. But until mid-August Mr. Hameen was represented by counsel, who had refused to raise the issue. Moreover, the district court did not take into account Mr. Hameen's discovery of the government's superseding indictment in another § 922(g) case, which illuminated the serious deficiencies in his own. That superseding indictment was dated September 26, 2019, just two weeks before Mr. Hameen's motion.

Regarding the delay's "potential impact on judicial proceedings," the district court stated that Mr. Hameen's motion unduly interfered with judicial proceedings because it was raised "on the eve of sentencing." But it failed to explain how it reached that conclusion or why the motion interfered with the proceedings any more than if it had been filed earlier.

Moreover, the court and the government knew at least as early as August 2019 when Mr. Hameen first raised *Rehaif*—if not in June 2019 when the Supreme Court issued the decision—that *Rehaif* arguably impacted his conviction and required additional litigation. Doc. 503 at 26

(government acknowledging parties should "deal" with *Rehaif* and then proceed with sentencing if appropriate); *id.* at 28–29 (court asking Mr. Hameen to clarify his *Rehaif* arguments).

The third factor is the reason for the delay. The district court stated that Mr. Hameen's only reason for the delay was his *pro se* status. This is clearly incorrect. Mr. Hameen asked counsel to raise *Rehaif*. Counsel refused. The issue thus would never have been raised but for Mr. Hameen asking to proceed *pro se*.

Moreover, this Court has found that negligence and carelessness can constitute excusable neglect. *See Cheney*, 71 F.3d at 850. If carelessness is excusable, so should Mr. Hameen's actual misunderstanding. As demonstrated by the discussion of *Rehaif* at the August 14, 2019 hearing, Mr. Hameen initially misunderstood the *Rehaif* decision, believing it to require knowledge of the interstate commerce element. *See* Doc. 503 at 26–30; Docs. 365–69. When Mr. Hameen learned about the superseding indictments in other § 922(g) cases, he understood the impact of *Rehaif* and brought that argument to the court. *See Montgomery*, 442 F.Supp.3d at 884 (holding that defendants demonstrated excusable neglect for untimely *Rehaif* motion more than

47

seven months after jury verdict, where *Rehaif* issued after defendants'
trial but before sentencing, and counsel acknowledged not recognizing
*Rehaif*'s impact until attending a continuing legal education course and
preparing for a different trial).

The fourth factor is whether the movant acted in good faith. The
district court determined Mr. Hameen had not acted in good faith based
on his earlier filings. Its consideration of those filings was erroneous. *Cf.*
*United States v. Nix*, 250 F.3d 738 (5th Cir. 2001) (refusing to accept
district court's finding of bad faith under *Pioneer* analysis, which had
focused not on the particular untimely documents but on the underlying
issues and record).

Properly focusing on the *Rehaif* motion, there was no bad faith. Mr.
Hameen had raised *Rehaif* earlier, despite not fully understanding it.
Moreover, the district court's characterization of his filing as "one
business day" before sentencing ignores that his motion was filed on a
Thursday and the sentencing was scheduled for the following Tuesday.
*Compare* Doc. 421, *with* Doc. 443. This was not a last minute trick lodged
in the eleventh hour.

In sum, the district court abused its discretion in finding that Mr. Hameen's untimely *Rehaif* motion was not caused by excusable neglect. Because Mr. Hameen showed excusable neglect, his motion for a judgment of acquittal or for a new trial is preserved and plain error does not apply.[13]

### 2. Mr. Hameen's motion for judgment of acquittal or new trial should have been granted.

The jury was not instructed that it had to determine whether Mr. Hameen knew he was convicted felon at the time of the firearm possession. Doc. 348 at 92. The jury instructions therefore omitted an essential element of the offense in light of *Rehaif*. And the evidence at trial was insufficient to prove this essential element. *See Hernandez*, 433 F.3d at 1333 ("When we review the sufficiency of the evidence, we draw all reasonable inferences in the light most favorable to the government.").

No witness testified that Mr. Hameen knew his relevant status when he possessed the firearm. When Mr. Hameen testified, he was not asked whether he knew he was a convicted felon at the time of the

---

[13]    Reversal is required even under plain error review. *See* Part II.C, *infra.*

possession. Mr. Hameen admitted he had multiple convictions, but there was no testimony or evidence regarding the length of his sentences. And the parties' stipulation addressed only that Mr. Hameen was a convicted felon at the time alleged in the indictment, not whether he knew his status at that time.

Indeed, the district court recognized the evidence at trial was insufficient. The court told Mr. Hameen the government's argument that the evidence was sufficient to convict after *Rehaif* "required [additional] proof." Doc. 476 at 9. The court then made the government prove the convictions listed in the PSR, and subsequently found that the length of the sentences imposed for those convictions established Mr. Hameen's knowledge of his status. *Id*. at 65.

Third, even if it did not err in denying Mr. Hameen's motion for a judgment of acquittal, the district court abused its discretion in denying his motion for a new trial because it applied the wrong standard. "On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses."

*Hernandez*, 433 F.3d at 1335 (internal quotation marks omitted). As this

Court has explained:

> If the court concludes that, despite the abstract
> sufficiency of the evidence to sustain the verdict,
> the evidence preponderates sufficiently heavily
> against the verdict that a serious miscarriage of
> justice may have occurred, it may set aside the
> verdict, grant a new trial, and submit the issues
> for determination by another jury.

*Id.* (internal quotation marks omitted).

When the district court considered the merits of Mr. Hameen's

motion, however, the court did not apply this standard. Instead, the court

subsumed its consideration under the standard for a motion for a

judgment of acquittal, viewing the evidence in the light most favorable to

the government. *See* Doc. 476 at 62–63. Its misapplication of the standard

constitutes an abuse of discretion. *See Hernandez*, 433 F.3d at 1335

(concluding that district court erred when considering motion for new

trial because it viewed all inferences in light most favorable to

government). Once abuse of discretion has been shown, remand for

consideration under the proper standard is required unless granting a

new trial would be an abuse of discretion. *Id.*

Granting Mr. Hameen a new trial would not be an abuse of discretion based on the trial evidence. *Id*. There was no evidence that Mr. Hameen knew that he was a convicted felon at the time of the offense. And while trial evidence established he had been convicted of felonies, no evidence was adduced at trial to prove he received a sentence of more than a year for any of those felonies. Under these circumstances, "the evidence preponderated heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id*. Although a motion for a new trial should be granted "with caution," Mr. Hameen's is one of those "exceptional cases" in which it would have been proper. *Id*.; *see Montgomery*, 442 F.Supp.3d at 895–96 (granting new trial motions based on *Rehaif* because "[t]he process by which the accused is convicted of a crime . . . does not allow a judge to, in effect, determine guilt by considering evidence never presented to the jury, in order to find an element not only omitted from the jury's instructions but stated by the Court to the direct opposite effect.").

## C.    Under Plain Error Review, Mr. Hameen's Conviction Must Be Vacated.

Even if Mr. Hameen's *Rehaif* arguments are reviewed for plain error, *Rehaif* has made plain (i) the indictment and jury instructions

failed to include the essential element of whether Mr. Hameen knew he was a convicted felon at the time of the offense and (ii) the government was required to prove this element beyond a reasonable doubt. *See United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) ("[The defendant] has established errors in his indictment and at his trial that *Rehaif* made plain.").

The errors affected Mr. Hameen's substantial rights. The indictment did not charge Mr. Hameen with what constitutes a crime; nor did the jury find Mr. Hameen guilty of a crime. Yet he stands convicted and is serving a 15-year prison sentence. *See United States v. Medley*, 972 F.3d 399, 410 (4th Cir. 2020) ("Since Medley's indictment failed to satisfy the notice function of an indictment through its charging language and description of overt acts, its defects violated Medley's substantial rights."); *id.* at 414–15 (holding government's insufficient evidence on defendant's knowledge of his prohibited status, and court's failure to instruct jury that it had to find that element, prejudiced defendant's substantial rights); *see also United States v. Edmond*, 780 F.3d 1126, 1130 (11th Cir. 2015) ("Because [the defendant] was convicted of a crime not charged in the indictment, and is now serving a sentence

for that conviction, the error clearly affected the outcome of his proceedings." (citation omitted)).

And even if these errors were insufficient on their own to prejudice his substantial rights, the cumulative effect of the errors is prejudicial:

> [T]he error was not just a single, simple procedural error—but a combination of errors that tainted many of the basic protections that permit us to regard criminal punishment as fundamentally fair. First, the Government failed to provide [Mr. Hameen] with adequate notice of the charges against him in is indictment. Second, [Mr. Hameen's] conviction was predicated on an indictment that fails to allege an essential element of the offense and on a verdict by a jury that was not instructed on that element. Third, scant evidence regarding the omitted element was presented at trial. Finally, [Mr. Hameen] had no reason to contest the omitted element at any point in the proceedings and, therefore, did not contest the element.

*Medley*, 972 F.3d at 415.

This Court should not "speculate how [Mr. Hameen] would defend against an element not at issue," especially a mens rea element, because "appellate judges are especially ill-equipped to evaluate a defendant's state of mind on a cold record." *Id.* at 414. But even if this Court looks to the trial record, there is a "reasonable probability that, but for the error, the outcome of the proceedings would have been different," *Molina-*

*Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016) (citation omitted), because the evidence at trial was insufficient to establish Mr. Hameen knew he was a convicted felon at the time of the offense. *See* Part II(B)(2), *supra*; *United States v. Rogers*, 94 F.3d 1519, 1523, 1527 (11th Cir. 1996) (reversing conviction based on insufficiency of evidence "[b]ecause the Government did not introduce any evidence showing that Rogers was aware that the MAC-11 had been altered to operate as a fully automatic weapon"); *United States v. Jones*, 21 F.3d 165, 173 (7th Cir. 1994) ("This erroneous jury instruction clearly affected the outcome . . . because the government had presented no evidence at trial to establish this element of the offense.").

Mr. Hameen recognizes that this Court reviews the entire record—not just the trial evidence—to determine if an error affected a defendant's substantial rights. *See Moore*, 954 F.3d at 1337; *Reed*, 941 F.3d at 1021–22. He respectfully maintains, however, that should this Court consider the record, it should limit itself to the evidence actually presented to the jury. *See Medley,* 972 F.3d at 413–15 (holding that "it is inappropriate to speculate whether a defendant could have challenged the element that was not then at issue," and that, in the alternative, consideration of *trial*

*record* demonstrated *Rehaif* error prejudiced defendant's substantial rights); *cf. United States v. Miller*, 954 F.3d 551, 558 (2d Cir. 2020) (citing *Neder v. United States*, 527 U.S. 1, 19 (1999)).

Finally, these errors—individually and cumulatively—seriously affected the fairness, integrity, and public reputation of the judicial proceedings. *See Medley*, 972 F.3d at 415–16 (holding that aggregate *Rehaif* errors undermined confidence in proceedings); *United States v. Gallegos*, 784 F.3d 1356, 1359 (10th Cir. 2015) ("[A] conviction in the absence of sufficient evidence will almost always satisfy all four plain error requirements."); *cf. Edmond*, 780 F.3d at 1130 ("[I]t is 'self-evident' that a defendant's conviction for a crime not charged in an indictment seriously affects the fairness, integrity, and public reputation of judicial proceedings." (citation omitted)). Mr. Hameen thus requests that this Court vacate his conviction and remand for further proceedings.

## III.   Mr. Hameen's Conviction Should Be Vacated Because 18 U.S.C. § 922(g) Is Unconstitutional, Facially and as Applied.

Mr. Hameen maintains, for purposes of further review, that § 922(g) exceeds Congress's authority under the Commerce Clause, and thus is unconstitutional, facially and as applied. *See* U.S. Const. art. I, § 8, cl. 3.

The Commerce Clause does not give Congress "general police power." Rather, Congress's power under that clause is limited to: (1) "channels of interstate commerce," (2) "instrumentalities of interstate commerce," and (3) "activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59, 567 (1995).

In *Lopez*, the Supreme Court used this framework to strike down the Gun-Free School Zones Act, 18 U.S.C. § 922(q), which prohibited possession of a firearm in a school zone. *Id.* at 551–52. Like § 922(q), § 922(g) prohibits mere possession—a non-economic activity—and does not ensure that this activity "substantially affects interstate commerce." *Id.* at 559, 561, 567. Indeed, the jurisdictional element set forth in § 922(g), like the jurisdictional element in § 922(q), fails to "ensure, through case-by-case inquiry, that the firearm *possession* in question affects interstate commerce." *Id.* at 561 (emphasis added). Section 922(g) is therefore facially unconstitutional.

Additionally, § 922(g) is unconstitutional as applied to Mr. Hameen's intrastate possession of a firearm. At trial, the ATF agent testified the firearm had been manufactured in California and it would have "affected" interstate commerce if it was recovered in Florida. He did

not testify regarding where the firearm traveled after its manufacture, or when or how it arrived in Florida. The government therefore did not establish any connection, let alone a substantial connection, between the charged possession offense and interstate commerce.

Mr. Hameen recognizes that this Court has rejected facial and as-applied challenges to § 922(g) based on *Scarborough v. United States*, 431 U.S. 563 (1977). *See United States v. Wright*, 607 F.3d 708, 715–16 (11th Cir. 2010). The *Scarborough* Court decided, as a matter of statutory interpretation, that Congress did not intend "to require any more than a minimal nexus that the firearm have been, at some time, in interstate commerce"—a standard well below *Lopez*'s later "substantial effects" test. *Compare Scarborough*, 431 U.S. at 575, 564, 577, *with Lopez*, 514 U.S. at 559. Mr. Hameen thus submits that *Scarborough* did not survive *Lopez*, and raises these arguments for purposes of further review.

## IV.  Aggravated Assault under Fla. Stat. § 784.021 Is Not A "Violent Felony" or "Crime of Violence."

The district court sentenced Mr. Hameen under the ACCA and USSG § 4B1.4(b)(3)(A) based, in part, on a prior aggravated assault conviction under Fla. Stat. § 784.021. Doc. 454 at 7–8; Doc. 476 at 95–

97.[14] Mr. Hameen acknowledges this Court has held that prior convictions under § 784.021 qualify as violent felonies for ACCA purposes and crimes of violence for sentencing guidelines purposes. *See Turner*, 709 F.3d at 1338; *Golden*, 854 F.3d at 1256–57. He maintains, however, that *Turner* failed to follow binding precedent and that its continued validity has been called into doubt by intervening Supreme Court decisions. *See Golden*, 854 F.3d at 1257–60 (Jill Pryor, J., concurring). Mr. Hameen thus preserves this argument for further review.

*Turner* held that Florida aggravated assault qualified as a violent felony under ACCA's elements clause because it necessarily had as an element the threatened use of physical force. 709 F.3d at 1338. In reaching that conclusion, however, *Turner* failed to follow binding Eleventh Circuit precedent. A "violent felony" requires intentional conduct. *See United States v. Palomino Garcia*, 606 F.3d 1317, 1334–36 (11th Cir. 2010). Under Florida case law, which *Turner* should have considered,[15] "the State may secure a conviction under the aggravated

---

[14]    Mr. Hameen's non-ACCA guidelines range also was enhanced under USSG § 2K2.1(a)(2) based on that prior conviction. Doc. 454 at 7; Doc. 476 at 83.

[15]    *See United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012).

assault statute by offering proof of less than intentional conduct, including recklessness." *Golden*, 854 F.3d at 1258 (Jill Pryor, J., concurring in the result) (citing Florida law). *Turner* thus conflicted with binding precedent in determining that Florida aggravated assault qualified as a violent felony.

Since *Turner*, the Supreme Court has confirmed that *Turner* was "mistaken" to "overlook" the "critical analytical step" of considering state court decisions interpreting the statute. *Id.* at 1259 (discussing *Moncrief v. Holder*, 133 S.Ct. 1678 (2013); *Descamps v. United States*, 133 S.Ct. 2276 (2013); *Mathis v. United States*, 136 S.Ct. 2243 (2016)). Taken together, these cases "reaffirmed the principle [this Court] set out in *Rosales-Bruno*: [the Court] look[s] to authoritative state court decisions to decide whether the least of the acts a state statute criminalizes constitutes a crime of violence." *Golden*, 854 F.3d at 1260 (Jill Pryor, J., concurring).

Moreover, the Supreme Court recently granted certiorari to decide whether a conviction for a crime that can be committed with a mens rea of recklessness—like Fla. Stat. § 784.021—may qualify as a violent felony under ACCA's elements clause. *See Borden*, 140 S.Ct. at 1262.

Accordingly, Mr. Hameen respectfully preserves the question whether his conviction under § 784.021 is a violent felony or crime of violence.

## V.    Mr. Hameen's Fla. Stat. § 893.13 Convictions Are Not "Serious Drug Offenses" or "Controlled Substance Offenses."

The district court also relied on two Florida drug convictions, *see* Fla. Stat. § 893.13, to enhance Mr. Hameen's sentence under the ACCA and USSG § 2K2.1(a)(2). Doc. 454 at 7–8; Doc. 476 at 86, 95–97.

In 2002, Florida eliminated knowledge of the illicit nature of the controlled substance as an element of § 893.13. *See State v. Adkins*, 96 So.3d 412, 415–16 (Fla. 2012); *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1350 (11th Cir. 2012). The elimination of the mens rea requirement applies to both of Mr. Hameen's § 893.13 convictions. *See* Doc. 454 at 7–8 (2008 and 2016 convictions).

This Court has held that a prior conviction under Fla. Stat. § 893.13 qualifies as a serious drug offense for ACCA purposes and as a controlled substance offense for sentencing guidelines purposes despite not requiring that the defendant know the illicit nature of the substance. *See Smith*, 775 F.3d at 1266–68. Mr. Hameen submits, however, that the definitions of a "serious drug offense" and "controlled substance offense"

should be read to include a mens rea element as to the illicit nature of the substance.

When interpreting statutory offenses, courts presume "that criminal statutes require the degree of knowledge sufficient to make a person legally responsible for the consequences of his or her act or omission." *Rehaif*, 139 S.Ct. at 2195 (internal quotation marks omitted). This "presumption in favor of scienter [applies] even when Congress does not specify any scienter in the statutory text." *Id; see Staples v. United States*, 511 U.S. 600, 605–06 (1994).

Neither Congress nor the Sentencing Commission clearly dispensed with a mens rea requirement in defining "serious drug offense" and "controlled substance offense." *See* 18 U.S.C. § 924(e)(2)(A); USSG §§ 2K2.1(a)(2), 4B1.2. Given ACCA's severe penalties, it is unlikely that Congress intended to include a strict-liability offense, like Fla. Sat. § 893.13, as an ACCA predicate. *See Staples*, 511 U.S. at 616–17 (ruling "potentially harsh penalty" of up to 19 years in prison supported reading statute to require mens rea); *Begay v. United States*, 553 U.S. 137, 144–47 (2008) (considering ACCA's 15-year mandatory minimum in

interpreting the ACCA's residual clause to be limited to purposeful offenses).

To the extent that any ambiguity remains, the rule of lenity supports Mr. Hameen's position. S*ee, e.g., Yates v. United States*, 135 S.Ct. 1074, 1088 (2015). Mr. Hameen therefore maintains, for purposes of further review, that his prior convictions under § 893.13 do not qualify as predicates for the ACCA or guideline enhancements.

## VI.   Mr. Hameen's ACCA Sentence Violates the Fifth and Sixth Amendment.

The ACCA requires three prior convictions that qualify as a "serious drug offense" or "violent felony" and that were "committed on occasions different from one another." *See* 18 U.S.C. § 924(e). Those requirements were not charged in Mr. Hameen's indictment and proven to a jury beyond a reasonable doubt, in violation of Mr. Hameen's Fifth and Sixth Amendment rights.

Any fact that increases the statutory mandatory minimum or maximum penalty is an "element" that must be charged in an indictment and proven to a jury beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Thus far, the "fact of a prior conviction" has been excepted

from this constitutional requirement. *See Alleyne*, 570 U.S. at 111 n.1; *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *Apprendi*, 530 U.S. at 490. Relying on this exception, courts have sentenced defendants under the ACCA based on their own findings concerning the "fact of a prior conviction," whether the prior conviction constitutes a "serious drug offense" or "violent felony," and whether offenses were "committed on occasions different from one another."

Subsequent opinions, however, have called *Almendarez-Torres* into question. *See, e.g., Apprendi*, 530 U.S. at 489-90 ("[I]t is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested"); *Sessions v. Dimaya*, 138 S.Ct. 1204, 1253 (2018) (Thomas, J., dissenting) ("The exception recognized in *Almendarez-Torres* for prior convictions is an aberration, has been seriously undermined by subsequent precedents, and should be reconsidered."); *Shepard v. United States*, 544 U.S. 13, 26-28 (2005) (Thomas, J., concurring in part and in the judgment) ("*Almendarez-Torres* . . . has been eroded by the Supreme Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided").

For purposes of further review, therefore, Mr. Hameen respectfully maintains that his sentence is unconstitutional because none of the ACCA's requirements were charged in his indictment or proven to his jury beyond a reasonable doubt.

## CONCLUSION

For the reasons explained above, Mr. Hameen requests his conviction and sentence be vacated.

Respectfully submitted,

James T. Skuthan
Acting Federal Defender

*/s/ Rosemary Cakmis*
Rosemary Cakmis
Senior Litigator
Florida Bar No. 343498
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: (407) 648-6338
Email: Rosemary_Cakmis@fd.org
Counsel for Mr. Hameen

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(g)(1), I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 12,741 words according to Microsoft Word's word count, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2020, the foregoing *Initial Brief of Appellant* was filed using the Court's Electronic Case Filing system, which will send notification to Roberta Bodnar, Assistant United States Attorney.

*/s/ Rosemary Cakmis*
Rosemary Cakmis
Counsel for Mr. Hameen